UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------X
UNITED STATES OF AMERICA,

                        12 CV 626 (SJ)

       v.

                        <u>MEMORANDUM</u>
                        <u>AND ORDER</u>

ALEXANDER FISHENKO, <u>et al.</u>,

          Defendants.
-------------------------------------------------X

A P P E A R A N C E S

LORETTA E. LYNCH
United States Attorney, EDNY
271 Cadman Plaza East
Brooklyn, New York 11201
By:    Daniel S. Silver
        Claire S. Kedeshian
        Hilary Jager
        David Recker
*Attorneys for the United States*

LEVITT & KAIZER
40 Fulton Street
23rd Floor
New York, NY 10038
By:    Richard Ware Levitt
        Dean Martin Solomon
*Attorney for Defendant Alexander Fishenko*

RICHARD B. LIND, ESQ.
488 Madison Avenue
19th Floor
New York, NY 10022
By:    Richard B. Lind
*Attorney for Defendant Shavkat Abdullaev*

WILSON SONSINI GOODRICH & ROSATI, PC
1301 Avenue of the Americas
40th Floor

1

New York, NY 10019
By:     Jason Brian Gumer
        Jason Stephen Juceam
        Morris J. Fodeman
*Attorney for Defendant Anastasia Diatlova*

STEVE ZISSOU & ASSOCIATES
42-40 Bell Blvd.
Suite 302
Bayside, NY 11361
By:     Steve Zissou
*Attorney for Defendant Alexander Posobilov*

LAW OFFICES OF SARITA KEDIA
5 East 22nd Street
Suite 7B
New York, NY 10010
By:     Sarita Kedia
*Attorney for Defendant Sevinj Taghiyeva*

CAPITAINE SHELLIST PEEBLES & MCALISTER, LLP
405 Main Street
Suite 200
Houston, TX 77002
By: Peyton Z. Peebles
*Attorney for Defendant Svetalina Zagon*


JOHNSON, Senior District Judge,

     The eleven individual defendants and two corporate defendants in this action were charged in a twenty-five count indictment with, <u>inter alia</u>, conspiracy to illegally export controlled microelectronics from the United States to Russia, money laundering, and conspiracy to commit wire fraud between October 2008 and September 2012. Presently before the Court are omnibus pretrial motions filed by

2

some defendants seeking to strike prejudicial surplusage, suppression of evidence, severance, a bill of particulars, and additional discovery.

Based on the submissions of the parties, the oral argument of July 25, 2014, and for the reasons stated below, Defendants' pre-trial motions are GRANTED in part and DENIED in part.

## BACKGROUND

### I.    The Indictment

On September 28, 2012, corporate defendants Arc Electronics, Inc. ("Arc") and Apex Systems, LLC ("Apex") as well as eleven individuals,[1] including Alexander Fishenko, an owner and the President of Arc ("Fishenko"), were charged in a twenty-five count indictment relating to an alleged conspiracy to violate U.S. export control laws for the purpose of exporting microelectronics to Russia. Fishenko and Arc are charged with additional violations, including acting as an unregistered agent of a foreign government.

Defendant Alexander Posobilov ("Posobilov") was Arc's procurement manager, Shavkat Abdullaev ("Abdullaev") was Arc's shipping manager, and Anastasia Diatlova ("Diatlova"), Sevinj Taghiyeva ("Taghiyeva"), and Svetalina Zagon ("Zagon") were salespeople who handled client accounts and conducted

---

[1] Neither Arc Electronics nor Apex Systems have formally appeared to date. Arc Electronics appeared for the limited purpose of requesting a release of corporate funds to retain counsel. ARC salespersons Lyudmila Bagdikian and Viktoria Klebanova were also charged, but have since pleaded guilty. Apex executives and Co-Defendants Sergey Klinov, Yuri Savin, and Dmitriy Shegurov were also charged, and remain fugitives.

purchases and sales of microchips. (Indict. ¶ 2.) The Government alleges that, during the course of the conspiracy, the Defendants illegally procured sophisticated microelectronics for Russian government agencies, including military and intelligence agencies, through Arc, a Houston-based corporation. (Indict. ¶ 15.) The Government alleges that Arc was part owner of Apex, which is a Moscow-based corporation. (Indict. ¶ 2.)

The Indictment alleges that Arc initially received requests for microelectronics and other high-tech goods from Russian procurement firms via e-mail. Arc's salespeople would then contact various U.S.-based manufacturers and distributers via e-mail to inquire about price and availability. In their response, the suppliers often queried Arc as to whether the item was subject to export controls and requested end-use information. Arc then allegedly provided false end use information to induce the suppliers to sell the requested materials. The Government alleges that communications intercepted during the course of the investigation revealed that a large portion of the technology exported by the Co-Defendants was destined for Russian military and intelligence agencies. (Indict. ¶ 15.)

## II.    **Defendants' Pretrial Motions**

Defendant Fishenko moved to suppress all evidence directly or indirectly obtained and derived from searches and seizures during the course of the investigation. Fishenko also requests the Court order disclosure of the documents underlying the electronic surveillance and physical searches conducted pursuant to

the Foreign Intelligence Surveillance Act of 1978, as amended, 50 U.S.C. § § 1801–1812, 1821–1829 ("FISA"), as well as the fruits of those searches. Diatlova, Zagon, and Taghiyeva (the "Clerk Defendants") join Fishenko's Motion to the extent it is not inconsistent with their own Motions. (Defs.' Mem. of Law at 4 n.1.)   On May 7, 2014, the Clerk Defendants filed pretrial motions seeking to strike prejudicial surplusage from the indictment, a bill of particulars, and for a separate trial.[2] Defendant Abdullaev requests to join the motions of his codefendants, to the extent they are applicable to him. (Notice of Motion (Dkt. No. 219), May 7, 2014.)   On May 13, 2014, Defendant Abdullaev submitted a separate memorandum in response to specific arguments made in the Clerk Defendants' Memorandum of Law. Specifically, Abdullaev joins the Clerk Defendants' arguments to strike prejudicial surplusage; requiring the government to furnish a bill of particulars; and to provide certain materials in advance of trial. Abdullaev also objects to being classified as a manager for purposes of severance. Fishenko joins the Clerk Defendants' motion to the extent it does not interfere with his own motion.

## DISCUSSION

### I.   Motion to Suppress

In accordance with the procedures set forth in FISA, see 50 U.S.C. § 1806(e), Defendant Fishenko, joined by Defendants Diatlova, Taghiyeva, Zagon, and

---

[2] Defendants also asked for Rule 404(b) Notice, Jencks Act Material, Brady Material, and Witness and Exhibit Lists. During Oral Argument on July 25, 2014, the parties indicate they are in negotiations and requested that the Court not to resolve this issue until the parties indicate that they desire Court intervention.

Abdullaev, seek disclosure of materials retrieved by the Government pursuant to the Foreign Intelligence Surveillance Act ("FISA") and suppression of any retrieved materials pursuant to the Fourth Amendment, 50 U.S.C. § 1825(f), Fed. R. Crim. P. 12(b)(3)(C), Fed. R. Crim. P. 41(h), and other applicable law.   Diatlova, Zagon, Taghiyeva, and Abdullaev join this request.  The government argues that the FISA surveillance at issue was lawfully authorized and conducted. The government further requests the Court order that none of the classified documents or classified information contained therein would need to be disclosed to the defendants. Pursuant to 50 U.S.C. § 1806(f), the government requested that the court conduct in camera and ex parte review of the materials, attaching a Declaration from the United States Attorney General Eric Holder stating: "I hereby claim that it would harm the national security of the United States to disclose or hold an adversarial hearing with respect to the FISA Materials."  (Decl. and Claim of Privilege of the Attorney General of the United States, June 12, 2014 ("Decl. of Attorney General"), ¶ 3.)

In reply, Defendants argue that the Court should order the government to disclose the unredacted memorandum and supporting documentation, and ultimately grant the motion to suppress or conduct a full evidentiary hearing. (Fishenko Reply Mem. of Law at 1.)  In making their claim, Defendants argue that Attorney General Holder's Declaration attached to the Government's opposition is insufficient to authorize the in camera, ex parte review of the FISA related documents.

6

### a. **FISA Procedures**

The Foreign Intelligence Surveillance Act authorizes and empowers designated judges to review ex parte applications submitted by the Executive Branch to conduct surveillance in aid of protecting the United States against attack by foreign governments or international terrorist groups. 50 U.S.C. §§ 1801(e), 1803. The procedures in obtaining approval of these applications are well documented, and courts within this Circuit have repeatedly upheld their constitutionality. See, e.g., United States v. Medunjanin, No. 10 CR 191, 2012 WL 526428 (E.D.N.Y. Feb. 16, 2012); United States v. Abu Jihaad, 531 F.Supp.2d 299 (D. Conn. 2008), aff'd, 630 F.3d 102; United States v. Sattar, No. 02 CR. 395, 2003 WL 22137012 (S.D.N.Y. Sept.15, 2003), aff'd sub nom. United States v. Stewart, 590 F.3d 93 (2d Cir. 2009); United States v. Rahman, 861 F.Supp. 247 (S.D.N.Y.1994), aff'd, 189 F.3d 88 (2d Cir. 1999); United States v. Megahey, 553 F.Supp. 1180 (E.D.N.Y.1982), aff'd sub nom. United States v. Duggan, 743 F.2d 59 (2d Cir. 1984). As such, there is no question as to the constitutionality of FISA.  At issue here, then, is whether Defendants have the right to inspect the documents to determine the legality of the electronic surveillance and searches.  (Fishenko's Mem. of Law at 6–13.)

For purposes of a suppression motion, the trial court has the opportunity to review the FISA Court's order, issued pursuant to 50 U.S.C. § 1805, in light of the underlying applications for surveillance, filed pursuant to 50 U.S.C. § 1804, in order "to determine whether the surveillance [at issue] was lawfully authorized and conducted." 50 U.S.C. § 1806(f). The district court's review of the FISA Court's

decision is, like the FISA Court's decision itself, deferential. <u>United States v. Duggan</u>, 743 F.2d 59, 77 (2d Cir. 1984).

### b.  **Disclosure of the FISA Searches**

#### i.  **Sufficiency of the Attorney General's Declaration**

For purposes of a Motion to Suppress, Congress expressly provided that where, as here, the Attorney General certifies that "disclosure [of FISA materials] or an adversary hearing would harm the national security of the United States," a district court must "review <u>in camera</u> and <u>ex parte</u> the application." 50 U.S.C. § 1806(f).

Fishenko argues that Attorney General Holder's June 12, 2014 Declaration is insufficient because "it is apparent that he had not read the redacted portions of the government's memorandum when he signed his Declaration." (Fishenko Reply Mem. of Law at 2.)  He further argues that the Attorney General's declaration is somehow deficient because it mentions potential classified materials which must be protected "merely because they are classified" when defense counsel has already had the opportunity to review "hundreds of thousands of classified documents." (Fishenko Reply Mem. of Law at 3.) Fishenko concludes from this that Attorney General Holder's declaration was not made in good faith.

This argument is speculative at best, and does not rise to the level that would warrant the Court's release of highly classified documents, the disclosure of which could potentially harm national security. Fishenko fails to cite any legal authority

8

which stands for the proposition that the Attorney General's Declaration must include a specified amount of detail in order to certify the risk.

Here, the Attorney General has declared, under penalty of perjury, that it would harm national security "to disclose or hold an adversarial hearing with respect to the FISA Materials" at issue in the case. (Decl. of Attorney General ¶ 3.) Additionally, the Attorney General "certif[ied] that the unauthorized disclosure of the FISA Materials that are classified at the 'SECRET' level reasonably could be expected to cause serious damage to the national security of the United States." (Decl. of Attorney General ¶ 5.) "[A] reviewing court [has] no greater authority to second-guess the executive branch's certifications than has the FISA Judge." United States v. Duggan, 743 F.2d 59, 77 (2d Cir. 1984). As such, the Court finds that the Attorney General's Declaration is fully compatible with the requirements of 50 U.S.C. § 1806(f), and sufficient to trigger an ex parte, in camera review of the FISA materials.

### ii. Defense Counsel's Review of the FISA Materials

Fishenko next argues that it is in the interest of justice that the Court authorize Defendants to review the FISA materials. Defendant cites United States v. Daoud in support of this proposition, arguing that a Judge "cannot be expected to undertake the role of defense counsel." (Fishenko's Mem. of Law at 6) (citing 2014 WL 321384 (N.D. Ill. January 29, 2014). However, the Seventh Circuit recently overruled the district court's order, finding: "It is a mistake to think that simple

9

possession of a security clearance automatically entitles its possessor to access to classified information that he is cleared to see." 755 F.3d 479, 484 (7th Cir. 2014) supplemented, 14-1284, 2014 WL 3734136 (7th Cir. July 14, 2014). As Judge Posner aptly notes in a supplemental opinion, "counsel's obligation to zealously represent the defendant comes with a real risk of inadvertent or mistaken disclosure; the risk is particularly worrisome in a case involving sensitive information." Daoud, 2014 WL 3734136, at *3.

Though the court is mindful of the difficulties that defense counsel must face in such circumstances, the FISA procedures are in place in the interest of national security. Courts have consistently held that revealing even the FISA applications to defense counsel is not warranted.  See, e.g., Medunjanin, 2012 WL 526428, *10 ("Neither the Fifth nor the Sixth Amendment affords the defense such access to this information. Information contained in the FISA applications 'would make all too much sense to a foreign counter-intelligence specialist who could learn much about this nation's intelligence-gathering capabilities from what these documents revealed about sources and methods.'" (citations omitted)). As a result, Defendant's argument on this point fails.


### iii. **Ex Parte and In Camera**

Defendants further seek to inspect the FISA applications and orders to determine whether valid arguments for suppression exist.

10

FISA applications are likely to contain highly sensitive information relating to issues of national security.  <u>United States v. Stewart</u>, 590 F.3d 93, 128 (2d Cir. 2009). Therefore, courts have consistently held that "disclosure of FISA materials is the exception and <u>ex parte</u>, <u>in camera</u> is the rule."  <u>United States v. Abu-Jihaad</u>, 630 F.3d 102, 129 (2d Cir. 2010); <u>see also</u> <u>United States v. Duggan</u>, 743 F.2d 59, 78 (2d Cir. 1984) ("'<u>[E]x parte</u>, <u>in camera</u> determination is to be the rule.'").  Disclosure is only permitted, pursuant to 50 U.S.C. § 1806(f) within the Court's discretion only following  <u>in camera</u>, <u>ex parte</u> review, and only if the Court is unable to determine the legality of the electronic surveillance, physical searches, or both, without the assistance of defense counsel.

The statute allows disclosure of the FISA dockets "under appropriate security procedures and protective orders" in the limited circumstance "where such disclosure is necessary to make an accurate determination of the legality of the surveillance." 50 U.S.C § 1806(f). Such a need might arise if <u>in camera</u> review reveals, for example, "'potential irregularities such as possible misrepresentation of fact, vague identification of the persons to be surveilled or surveillance records which include a significant amount of nonforeign intelligence information, calling into question compliance with the minimization standards contained in the order.'" <u>Stewart</u>, 590 F.3d at 129 (quoting <u>Duggan</u>, 743 F.2d at 78 (internal quotation marks and brackets omitted)). Additionally, "[n]o United States District Court or Court of Appeals has ever determined that disclosure to the defense of such materials was necessary to determine the lawfulness of surveillance or searches under FISA. . . . Defendant does

11

not point to any case where any court has ordered disclosure in a situation similar to his." Medunjanin, 2012 WL 526428, at *10 (citations and internal quotations omitted).

In assessing the lawfulness of the surveillance or search, a Court must consider whether "(1) the application makes the probable cause showing required by FISA, i.e., that the target of the warrant is a foreign power or agent thereof and that the facilities or places to be searched or surveilled are being used or about to be used by a foreign power or its agent; (2) the application is otherwise complete and in the proper form; and (3) when the target is a United States person, the application's certifications are not 'clearly erroneous.'" Duggan, 743 F.2d at 77.

The Court has conducted a careful in camera review of the challenged FISA orders, the government's applications for those orders, and the classified materials submitted in support of those applications. The Court finds that the voluminous record fully described the facts supporting the Government's assertion of probable cause, and thus convincingly satisfies FISA's probable cause standard. The Court finds that surveillance was lawfully authorized and conducted in compliance with FISA, and that disclosure is not applicable in this case. Therefore, Defendants' motion to suppress evidence obtained by the government pursuant to FISA is DENIED.

12

P-049

## II.     Motion for a Separate Trial

Defendants Diatlova, Taghiyeva, Zagon  (the "Clerk Defendants") move to sever their trial from Abdullaev, Posobilov, and Fishenko, who they have defined as the "Management Defendants."    (Defs.' Mem. of Law at 5.) These "Clerk Defendants" maintain that a joint trial would be prejudicial given the "inflammatory and damaging charges" against their co-defendants.  (Defs.' Mem. of Law at 2.) They additionally argue that they are named in a collective total of nine counts in a twenty-five count indictment, "none of which are the most serious charges levied in the indictment." (Defs.' Mem. of Law at 13.) Abdullaev, however, argues that the Clerk Defendants exaggerate Abdullaev's role as a manager, while minimizing their own role in the company.   (Abdullaev Mem. of Law at 2.) He opposes their characterization of him as a Management Defendant, and requests that the Court view him as a Clerk Defendant for purposes of severance. The Government opposes, arguing that the charges against all defendants arise from "the identical set of operative facts and are largely supported by the same evidence as the charges against their co-defendants." (Govt.'s Opp. to Defs.' Mot. at 5.)


### a.  Legal Standard

Federal Rule of Criminal Procedure 8(b) states that an "indictment or information may charge two or more defendants if they are alleged to have participated in the same act or transaction, or in the same series of acts or transactions, constituting an offense or offenses." "[W]hen defendants properly have

been joined under Rule 8(b), a district court should grant a severance under Rule 14 only if there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence." Zafiro v. United States, 506 U.S. 534, 539 (1993). "Such a risk might occur when evidence that the jury should not consider against a defendant and that would not be admissible if a defendant were tried alone is admitted against a codefendant." Id. "[A] defendant seeking severance under Rule 14 bears an extremely difficult burden of proving . . . that the prejudice would be so great as to deprive him of his right to a fair trial." U.S. v. Barret, 824 F.Supp.2d 419, 433 (E.D.N.Y. 2011) (quotation omitted).

Whether to grant a motion to sever is committed to the sound discretion of the trial court. Some factors to be considered include:(i) the number of defendants and counts; (ii) the complexity of the indictment; (iii) the estimated length of trial; (iv) disparities in the amount or type of proof offered against the defendants; (v) disparities in the degrees of involvement by defendants in the overall scheme; (vi) possible conflict between defense theories or strategies; (vii) potential prejudice from evidence admitted only against codefendants but which is inadmissible or excluded as to a particular defendant; and (viii) potential prejudice if exculpatory evidence were unavailable in a joint trial, but would have been available to a defendant tried alone. U.S. v. Guillen–Rivas, 950 F.Supp.2d 446, 457 (E.D.N.Y. 2013).

The Supreme Court has recognized and reaffirmed "a preference in the federal system for joint trials of defendants who are indicted together" because they

14

promote efficiency and prevent the injustice of inconsistent verdicts. <u>Zafiro</u>, 506 U.S. at 537. Joint trials also "limit inconveniences to witnesses, avoid delays in bringing defendants to trial and permit the entire story to be presented to a single jury." <u>United States v. Rucker</u>, 32 F.Supp.2d 545, 547 (E.D.N.Y. 1999).

### b.  <u>Analysis</u>

The Court finds that the Clerk Defendants have failed to meet their heavy burden of proving that severance is warranted.

First, the Court finds unavailing the contention that the number of defendants and counts would make the trial record more difficult for a jury to follow the facts of the case as they relate to each Defendant. (Defs.' Mem. of Law at 12.)  Severance is not required simply because there are numerous defendants. <u>See</u> <u>DiNome</u>, 954 F.2d at 842 (finding no error in denial of severance as to most of the defendants because "[t]here is no support in caselaw or in logic for the proposition that a lengthy trial, a large number and variety of charges, and numerous defendants violate due process without a showing that the issues were actually beyond the jury's competence").  In fact, the Second Circuit had recognized that "district judges must retain a considerable degree of discretion in determining whether, on balance, the fair administration of justice will be better served by one aggregate trial of all indicted defendants or by two or more trials of groups of defendants." <u>United States v. Casamento</u>, 887 F.2d 1141 (2d Cir.1989), <u>cert.</u> <u>denied</u>, 493 U.S. 1081 (1990).

P-049

The Court also disagrees with the Clerk Defendants' contention that this trial should be severed due to its complexity. The Clerk Defendants argue that the case is complex because it requires a jury determination of: "(1) whether certain products are prohibited exports under the IEEPA or the AEPA; (2) whether each of the defendants participated in the export of those products; and (3) whether each defendant acted knowingly and willfully with respect to each alleged unlawful export." (Defs.' Mem. of Law at 14.)

The Court does not find that, at this time, the complexity of the case or the allegedly varying levels of defendant culpability warrants severance. The requisite evidence in this case, as the Government has stated, would require establishing that Arc's owners and employees made misrepresentations regarding Arc's actual functions, regardless of whether the trials were severed. (Govt.'s Motion at 9.) Defendants argue that the Clerk Defendants are only charged with specific transactions. All Defendants are charged with conspiracy and substantive export violations. The underlying conduct in question is the illegal export of controlled commodities, and false statements to suppliers, and all are part of a general conspiracy. (Govt.'s Opp. Mem. of Law at 9.)

With respect to length of the trial, the Court is not convinced that severance is warranted for this reason. The parties disagree as to the estimated length of the trial (the Government claims it would last roughly two to three weeks, while the Clerk Defendants claim it will take six to eight weeks). Because much of the evidence regarding the conspiracy would be admissible against all Defendants, severance is

16

P-049

not likely to result a significant decrease in trial length. Further, a possible decrease in trial time would be outweighed by certain risks such as the burden of multiple prosecutions, and inconsistent verdicts. See, e.g., United States v. Stein, 428 F. Supp. 2d 138, 145 (S.D.N.Y. 2006).

Defendants also argue that the introduction of evidence not directly related to each Defendant would cause so much "spillover prejudice" as to warrant severance. "Evidence adduced against one alleged co-conspirator is 'neither spillover nor prejudicial' if it would be admissible at a separate trial against the movant as an act of a co-conspirator in furtherance of a conspiracy due to the nature of conspiratorial illegal activity." United States v. Barrett, 824 F. Supp.2d 419 (E.D.N.Y. 2011) (citing United States v. Rosa, 11 F.3d 315, 341 (2d Cir. 1993)).

"The typical spillover claim is that evidence admissible against only one defendant is prejudicial to all defendants and that individual trials should have been held to avoid that prejudice." United States v. DiNome, 954 F.2d 839, 843 (2d Cir. 1992). By contrast, in this case, given the common conspiracy counts against Fishenko and his co-defendants, all of the evidence that relates to the conspiracy would be admissible in a severed trial. In order to establish the conspiracy, the Government will be required to establish various aspects of the enterprise, including the nature, function, and objects of the charged conspiracy. Multi-defendant trials are quite common in the federal system, and many involve evidence that is admissible against one defendant, but not against another. See Richardson v. Marsh, 481 U.S. 200, 209–10 (1987). Federal courts, quite routinely, have found juries able

17

to follow and abide by appropriate cautionary instructions. See, e.g., United States v. Salameh, 152 F.3d 88, 116–17 (2d Cir.1998) ("[A]ny possible prejudice was eliminated by the district court's repeated admonitions to the jury that each defendant's guilt had to be separately and individually considered.") (citing United States v. Hernandez, 85 F.3d 1023, 1029–30 (2d Cir. 1996); United States v. Losada, 674 F.2d 167, 171 (2d Cir.1982)).

The possibility that some incriminating evidence will be admissible only against certain defendants does not, as Defendants assert, justify severance.[3] Because all Defendants are charged with the same conspiracy, much of the evidence would be admissible against each defendant, even in a separate trial. The preference for a joint trial is strong where, as here, the defendants are alleged to have participated in a conspiracy. See Zafiro, 506 U.S. at 537; Salameh, 152 F.3d at 115 (strong preference for joint trial where "defendants are alleged to have participated in a common plan or scheme").

Nor is the court persuaded by the Defendants' remaining arguments. Defendants claim, for example, argue that mutually antagonistic defenses should lead to severance.   However, the Supreme Court has noted that "[m]utually antagonistic defenses are not prejudicial per se." Zafiro, 506 U.S. at 538; see also United States v. Carpentier, 689 F.2d 21, 27–28 (2d Cir.1982) ("A simple showing of some antagonism between defendants' theories of defense does not require

---

[3] This is inapposite to this Court's case United States v. Dowtin, No. 10 CR 657, 2012 WL 7679552 (E.D.N.Y. Nov. 20, 2012), where this Court found  the potential for prejudicial spillover from evidence of violent acts committed by co-defendants involving both violent and non-violent members of the Nine-Trey Gangsters ("NTG"), a subset of the Bloods street gang.

18

severance.")   Rather, the existence of antagonistic defenses rises to the level of prejudice requiring severance only when the core of one defendant's defense conflicts with the defense of another co-defendant. <u>Grant v. Hoke</u>, 921 F.2d 28, 32 (2d Cir. 1990).

The Clerk Defendants' remaining arguments with respect to severance are without merit, and the motion for severance is DENIED.

### III.   <u>Striking Prejudicial Surplusage</u>

All Defendants move to strike certain portions of the indictment as prejudicial. The Government opposes, arguing that the challenged language is relevant and admissible to the charged conspiracy.

#### a.  <u>Legal Standard</u>

Under Federal Rule of Criminal Procedure 7(d), the court may strike surplusage from an indictment upon a defendant's motion. Fed. R. Crim. P. 7(d). The Second Circuit has held, however, that district courts should not grant motions to strike surplusage unless "the challenged allegations are not relevant to the crime charged and are inflammatory and prejudicial." <u>United States v. Mulder</u>, 273 F.3d 91, 99 (2d Cir. 2001) (quoting <u>United States v. Scarpa</u>, 913 F.2d 993, 1013 (2d Cir. 1990)). Moreover, "even language deemed prejudicial should not be stricken if evidence of the allegation is admissible and relevant to the charge." <u>United States v.</u>

Rivera, No. 09–CR–619, 2010 WL 1438787, at *5 (E.D.N.Y. Apr. 7, 2010) (citing Scarpa, 913 F.2d at 1013).

### b. **Analysis**

At oral argument on July 25, 2014, the parties consented to the omission or redaction of paragraphs eight through twelve of the indictment, which include background information in the International Emergency Economic Powers Act ("IEEPA"), and the Arms Export Control Act ("AECA"), two statutes which are the basis for the allegations against the Defendants. As such, the Court GRANTS Defendants requests with respect to those paragraphs.

Defendants have also requested that the Court grant their request to strike "inflammatory references to threats, national security, and Russian Government entities as irrelevant and prejudicial." (Defs.' Mem. of Law at 32.)    Defendants argue that the terms "unusual or extraordinary threat to national security," "national emergency, and "threat" do not relate to the allegations in the indictment. Defendants specifically request the removal of phrases referencing the "Russian military and intelligence agencies" to be stricken from the indictment. (Defs.' Mem. of Law at 34–35.) However, the Defendants are charged under the IEEPA and AECA for the procurement of microelectronics on behalf of Russian military and intelligence services, without obtaining required export licenses.  "[I]f evidence of the allegation is admissible and relevant to the charge, then regardless of how prejudicial the language is, it may not be stricken." United States v. Yousef, 327 F.3d 56, 111 (2d

20

Cir. 2003) (quoting <u>United States v. DePalma</u>, 461 F.Supp. 778, 797 (S.D.N.Y. 1978)).  Further, the Defendants specify which sections of the indictment they are requesting this Court strike. (Defs.' Mem. of Law at 34–35.) At the same time, Defendants appear to concede the relevance of descriptors within the indictment, e.g., "willful export from the United States to Russia items designated as <u>defense</u> articles." (Indict. ¶ 30) (emphasis added.)  In the same vein, the Court finds phrases such as "including Russian military and intelligence agencies" similarly descriptive but not inflammatory and appropriate for consideration by the jury. "Given the exacting standard for striking surplusage, these words do not meet the requirements as set down by case law and will not be stricken." <u>United States v. Napolitano</u>, 552 F. Supp. 465, 480 (S.D.N.Y. 1982). Thus, the Court declines to grant the Defendants' request to strike these additional references.

The Defendant's request to strike certain portions of the indictment is GRANTED in part and DENIED in part.

### IV. <u>Bill of Particulars</u>

#### a. <u>Legal Standard</u>

Federal district courts have the authority to "direct the government to file a bill of particulars." Fed. R. Crim. P. 7(F).  The district court has broad discretion in deciding whether to grant a motion for a bill of particulars. <u>United States v. Walsh</u>, 194 F.3d 37, 47 (2d Cir. 1999); <u>United States v. Panza</u>, 750 F.2d 1141, 1148 (2d Cir. 1984).  A bill of particulars may be appropriate "where the charges of an indictment

21

are so general that they do not advise the defendant of the specific acts of which he is accused." Walsh, 194 F.3d at 47.  The purpose of a true bill of particulars is three-fold: to provide a defendant the necessary facts that would allow him "[1] to prepare for trial, [2] to prevent surprise, and [3] to interpose a plea of double jeopardy should he be prosecuted a second time for the same offense." United States v. Bortnovsky, 820 F.2d 572, 574 (2d Cir. 1987).  The defendant bears the burden of showing "the information sought is necessary," and that he will be prejudiced without it. United States v. Fruchter, 104 F.Supp. 2d 289, 312 (S.D.N.Y. 2000).

### b.  Analysis

Defendants argue that the Government has not provided counsel with certain "critical information" in which Defendants and counsel cannot effectively prepare for their defense." (Defs.' Mem. of Law at 36.)  More specifically, the Defendants have requested information about the specific transactions that are alleged violations of the IEEPA, ARCA, and wire fraud.  The Clerk Defendants request "that they be informed whether there are additional actions in which they allegedly engaged that the Government will argue are also in furtherance of the conspiracy." (Defs.' Mem. of Law at 38.)

A Defendant is not entitled to preview the Government's strategy and plan for trial.    See, e.g., United States v. Torres, 901 F.2d 205, 234 (2d Cir. 1990) ("Acquisition of evidentiary detail is not the function of the bill of particulars") (quotation marks and citations omitted); United States v. Sindone, No. 01 CR. 517,

22

2002 WL 48604, at *1 (S.D.N.Y. Jan. 14, 2002) (a bill of particulars is not appropriate for use as a general pre-trial investigative tool for the defense); United States v. Fruchter, 104 F. Supp. 2d 289, 311–12 (S.D.N.Y. 2000) (a bill of particulars is not appropriate as a device to compel the Government to disclose the manner in which it will attempt to prove its charges); United States v. Jimenez, 824 F. Supp. 351, 363 (S.D.N.Y. 1993) (a bill of particulars is not appropriate as a tool to foreclose the Government from using proof it may develop as the trial approaches).

Here, in evaluating Defendants' specific requests for bills of particulars, the Court notes that the Government has indicated that it has disclosed and/or made available the vast majority of the evidence in its possession that it intends to introduce at trial during its case-in-chief.  Thus, while the Indictment itself is not necessarily chock-full of evidentiary details, Defendants have received a significant amount of disclosure including documents organized into folders specific to each count and in electronically searchable format.  (Govt.'s Opp'n to Defs.' Motion at 20–21.)

The Defendants point out that they have received "hundreds of additional recordings and tens of thousands of additional documents provided in discovery upon which the government may rely."  (Defs.' Reply Mem. of Law at 17.) The Court is mindful of the burden of such a large amount of discovery. "[S]ometimes, the large volume of material disclosed is precisely what necessitates a bill of particulars." United States v. Bin Laden, 92 F.Supp.2d 225, 234 (S.D.N.Y. 2000) (citing United States v. Bortnovsky, 820 F.2d 572, 575 (2d Cir. 1987)).

23

The Defendants' Motion for a Bill of Particulars is conditionally DENIED. However, should the Government intend to introduce any additional overt acts not already identified in the Indictment, the Government is required to disclose them in advance of trial.

## V.    Conclusion

For the foregoing reasons, Defendants' pre-trial motions are GRANTED in part and DENIED in part.

SO ORDERED.

Dated:    September 25, 2014
          Brooklyn, New York                    Sterling Johnson, Jr., U.S.D.J.

P-049